UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIN D.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C24-5665-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical opinions, her testimony, and the lay witness evidence. (Dkt. # 10.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 12.) Plaintiff filed a reply. (Dkt. # 13.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).[1]

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

## II. BACKGROUND

Plaintiff was born in 1978, has at least a high school education, and previously worked as a phlebotomist, patient services representative, and child care worker. AR at 234, 248, 1043. Plaintiff was last gainfully employed before her alleged onset date. *Id.* at 1027.

In October 2016, Plaintiff applied for benefits, alleging disability as of March 2013. AR at 200-13. Her applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 65-120. After the ALJ conducted a hearing in September 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 13-32. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. *Id.* at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. *Id.* at 1101-02.

After this Court affirmed the ALJ's decision in September 2020, Plaintiff sought judicial review before the Ninth Circuit. AR at 1167-73. In December 2021, the Ninth Circuit reversed this Court and remanded the matter to the ALJ with instructions to reevaluate the medical opinions from Plaintiff's treating providers, Plaintiff's symptom testimony, and the third-party function report from Plaintiff's fiancé. *Id.* at 1153-59. On remand, following hearings in February 2023 and February 2024, the ALJ again issued a decision finding Plaintiff not disabled. *Id.* at 1021-55.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff has the severe impairments of fibromyalgia, generalized anxiety disorder ("GAD"), major depressive disorder ("MDD"), and migraines. AR at 1027. Additionally, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with certain limitations. Specifically, she can occasionally climb ladders, ropes, or scaffolds; crawl;

[2] 20 C.F.R. §§ 404.1520, 416.920.

and be exposed to vibration, extreme cold, bright lights, and loud noises. *Id.* at 1030-31. Furthermore, she is capable of understanding, remembering, and applying detailed but not complex instructions, performing predictable tasks in a non-fast-paced, non-production environment, and tolerating occasional changes in the workplace along with interactions with the public. *Id.* This appeal followed. (Dkt. # 4.)

**III. LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021), *superseded on other grounds by regulation*. The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. If the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of proving harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating Medical Opinions

Because Plaintiff applied for benefits before March 27, 2017, the ALJ's assessment of the medical opinion evidence is governed by prior regulations. These regulations classify physician opinions into three distinct categories: (1) treating physicians; (2) examining physicians; and (3) reviewing physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *superseded by regulation on other grounds*. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted), *superseded by statute on other grounds*. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

*1. Treating Physician—Dr. Kenneth Bakken*

In August 2018, Dr. Bakken assessed that Plaintiff required 30 minutes to 2 hours of rest, one to three times daily; would likely miss four or more workdays each month; could not lift over 5 pounds; could not sit, stand, walk, or carry items for more than 10 minutes; and could sometimes handle objects bilaterally but could never reach. AR at 1017-20. The ALJ found Dr. Bakken's opinion unpersuasive, arguing it lacked support from the longitudinal record and from the doctor's own treatment notes. *Id.* at 1041-42.

The ALJ acknowledged the variability in fibromyalgia symptoms, noting Plaintiff's reports of fluctuating pain levels and physical examination findings that included upper back tenderness and trigger points, as well as numbness and tingling during positive straight leg raise tests. AR at 1041-42 (citing *id.* at 1584, 1611-14, 1780). Despite acknowledging this, the ALJ concluded that the majority of Plaintiff's medical records conveyed normal findings. *Id.* Although the ALJ referenced some benign examination results (*id.* at 507, 524, 612, 819, 1556-58, 1639, 1780), such findings must be "read in context of the overall diagnostic picture" presented by the healthcare provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014), *superseded by statute on other grounds*.

Most of the cited records verify that Plaintiff was consistently observed with muscle tension and palpable tender spots. AR at 1041-42 (citing *id.* at 531, 541, 600, 606, 609, 615, 624, 627, 837, 840, 844, 847-96, 953, 955, 962, 967, 970, 975-1013). Further, many of the normal findings referenced by the ALJ were from visits unrelated to fibromyalgia symptoms, such as treatments for a urinary tract infection, cardiac evaluations, and treatment for cysts. *Id.* (citing *id.* at 507, 524, 1556-58, 1580). The ALJ's conclusion thus lacked substantial evidentiary support.

*See Reddick*, 157 F.3d at 723 (ALJ's decision unsupported where "paraphrasing of record material is not entirely accurate regarding the content or tone of the record.")

The ALJ also questioned the necessity of Dr. Bakken's treatment plan, which included high doses of pain medication and monthly injections. AR at 1042. This assessment was based on later documentation showing that a substitute doctor no longer prescribed pain medications and that Plaintiff's primary care provider subsequently managed her medications, leading to reduced dosages. *Id.* While the ALJ noted that Plaintiff reported fewer "bad days" and showed a desire to continue reducing her medication, such changes do not negate the legitimacy of Dr. Bakken's assessments. *Id.* (citing *id.* at 1567, 1583, 1586, 1590).

The Commissioner argues that an ALJ may reject a medical opinion when it is based on erroneous beliefs regarding necessary levels of medical treatment. (Dkt. # 12 at 9 (citing *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).) In *Chaudhry*, the Ninth Circuit upheld the ALJ's decision to discount a medical opinion that "was predicated in part on [the provider's] erroneous belief that the patient's wheelchair and cane were prescribed." 688 F.3d at 671. Here, though, there is nothing indicating that Dr. Bakken's treatment plan relied on improper assumptions. The fact that Plaintiff experienced some improvement after other doctors adjusted her treatment to limit her reliance on opioid medication, with her cooperation and endorsement, does not undermine the credibility of Dr. Bakken's opinion as Plaintiff's specialist treating physician.

The ALJ further discounted Dr. Bakken's opinion on the grounds that mental health counseling notes did not support the significant effect on functioning implied by the doctor. AR at 1042 (generally citing *id.* at 1784-1854). These treatment notes—from telehealth mental health sessions in 2023—reflect Plaintiff's worries about homelessness, document opioid therapy for

pain management and the use of a service animal, and address her trauma and panic attacks while noting consistent observations of depression and an anxious mood. *Id.* at 1784-1854. Moreover, the presence of a few normal findings does not provide substantial evidence regarding Plaintiff's fibromyalgia. *See Levin v. Schweiker*, 654 F.2d 631, 634-35, esp. 634 n. 7 (9th Cir. 1981) (ALJ must make "full and detailed findings of fact" supporting ultimate determination of disability); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("sheer disbelief is no substitute for substantial evidence."); *see also Revels v. Berryhill*, 874 F.3d 648, 666-67 (9th Cir. 2017) (citing *Benecke* and holding that normal objective findings and conservative treatment are not inconsistent with debilitating fibromyalgia pain).

The Commissioner, citing *Maureen S. v. Comm'r of Soc. Sec.* (dkt. # 12 at 11), distinguishes *Revels* on the grounds that an ALJ may rely on objective evidence that is specifically inconsistent with Plaintiff's alleged limitations. 2019 WL 2491915, at *2 (W.D. Wash. June 14, 2019). However, this case is readily distinguishable from *Maureen*, where the ALJ found that objective findings of full muscle strength and absence of weakness were inconsistent with the plaintiff's claim that her fibromyalgia caused muscle weakness. *Id.* Additionally, the ALJ noted numerous objective findings indicating a normal gait and station, along with medical advice to engage in regular aerobic exercise, which were contradictory to her complaints of limited ability to stand or walk without frequent rest. *Id.* In the present case, however, the ALJ broadly concluded that normal objective findings in the record were inconsistent with fibromyalgia pain (AR at 1041-42), rather than identifying specific medical findings that directly contradicted Dr. Bakken's opinion and Plaintiff's alleged limitations, as in *Maureen*.

The Ninth Circuit previously remanded this matter after concluding that the ALJ "ignored the longitudinal record, which shows that Dr. Bakken treated [Plaintiff] for nearly seven years over more than 80 visits, and that [Plaintiff's] pain level fluctuated [] from visit to visit, as fibromyalgia symptoms tend to do." AR at 1157. The Ninth Circuit also stated that because Dr. Bakken specialized in treating fibromyalgia patients, his opinion "should be given more weight than that of a non-specialist physician." *Id.* at 1158. While the ALJ recognized Dr. Bakken's treating relationship (*id.* at 1041), his conclusory assertion that the doctor's opinion lacked support did not address the prior errors identified by the Ninth Circuit. *Id.* at 1156-5.

The ALJ's reliance on selective findings ignored the specialized insight Dr. Bakken provided and failed to properly account for fibromyalgia's chronic nature, which presents with variable intensity. The ALJ failed to properly analyze Plaintiff's fibromyalgia symptoms under Social Security Ruling ("SSR") 12-2P, issued in 2012, and the Ninth Circuit's opinion in *Benecke*, 379 F.3d at 587. These errors stemmed from a fundamental misunderstanding of fibromyalgia, which appears to be a recurrent problem.[3] In evaluating fibromyalgia, the medical evidence must be construed in light of the unique diagnostic nuances of fibromyalgia and the importance of patient reports, as described in SSR 12-2P and *Benecke*. *See also Revels*, 874 F.3d at 666. The failure to do so constitutes error, as is true here.

*2. Treating Physician—Dr. Clyde Addison*

In December 2021, Dr. Addison assessed that Plaintiff needed to lie down for 15 to 90 minutes daily, one to two times per day, and would likely experience four or more additional

---

[3] *See*, *e.g.*, *Krystafer B. v. Comm'r of Soc. Sec.*, 2024 WL 895127, at *5 (W.D. Wash. Mar. 1, 2024); *Sakowitz v. Kijakazi*, 2023 WL 8797507, at *1 (9th Cir. 2023); *Estrada v. Saul*, 842 Fed. Appx. 154, 155 (9th Cir. 2021); *Weiskopf v. Berryhill*, 693 Fed. Appx. 539, 541–42 (9th Cir. 2017); *Hamilton-Carneal v. Colvin*, 670 Fed. Appx. 613, 613 (9th Cir. 2016); *Payan v. Colvin*, 672 Fed. Appx. 732, 732 (9th Cir. 2016); *Benecke*, 379 F.3d at 594.

absences each month. AR at 1652-53. While the ALJ acknowledged Dr. Addison's long-term treatment relationship with Plaintiff,[4] the ALJ ultimately discounted his opinion, asserting that it was not substantiated by the longitudinal record for the same boilerplate reasons given in the analysis of Dr. Bakken's assessment. *Id.* at 1042. As discussed above, the ALJ's evaluation lacks substantial evidentiary support.

*3. Reviewing Consultants' Opinions*

The ALJ assigned significant weight to the opinions of the Disability Determination Services ("DDS") medical consultants, Drs. Norman Staley and Desmond Tuason, who concluded that Plaintiff could handle light work with some postural limitations. AR at 1040 (citing *id.* at 1110-11, 1121-22, 1130-31, 1139-40). In contrast, Dr. James Irwin, the initial DDS consultant to evaluate Plaintiff's records in June 2017, limited her to sedentary work. *Id.* at 105. The ALJ rejected Dr. Irwin's opinion, stating it conflicted with the evaluations of Drs. Staley and Tuason, which he found more consistent with the overall medical record. *Id.* at 1041. Although the ALJ found that these consultants reviewed the medical evidence and understood the Social Security Act, the assertion that their opinions tracked with generally unremarkable findings is not supported by substantial evidence, as discussed.

The ALJ also failed to reconcile this conclusion with the Ninth Circuit's remand order, which mandated that the ALJ properly consider Plaintiff's treating physicians' assessments and "account for the unique nature of the often-misunderstood condition of fibromyalgia, including that it is diagnosed based entirely on a patient's subjective reports, not through any X-ray, magnetic-resonance imaging, electromyography test, or other laboratory test." AR at 1159. The

[4] In remanding this matter, the Ninth Circuit found that the ALJ failed to properly evaluate opinions from Plaintiff's "two long-time treating physicians," Dr. Bakken and Dr. Addison. AR at 1157.

ALJ thus erred by prioritizing the medical consultants' opinions over those of Plaintiff's two long-term primary treating physicians.

*4. Examining Doctor's Opinion*

In May 2021, consultative physician Dr. Shirley Deem determined that Plaintiff could lift and carry in accordance with light work requirements, as well as engaging in frequent postural activities. AR at 1611-14. Dr. Deem performed an examination and reviewed one medical record from January 20, 2021, which was related to Plaintiff's treatment for a urinary tract infection. *Id.* at 1611. The ALJ assigned substantial weight to Dr. Deem's opinion, citing her direct examination and asserting that her conclusions aligned with the longitudinal record as discussed in the evaluations of the consultants' opinions. *Id.* at 1042. For the reasons outlined earlier, however, the ALJ's evaluation of Dr. Deem's opinion was flawed and not supported by the comprehensive context of the medical evidence.

In sum, the ALJ's disregard for the treating physicians' opinions and the nuanced presentation of fibromyalgia in his evaluations fundamentally undermined the accuracy of his determination of Plaintiff's disability status. The treatment histories and opinions of Drs. Bakken and Addison should carry significant weight, and the ALJ's erroneous reliance on consulting opinions and selective evidence—absent a thorough understanding of the unique nature of fibromyalgia—resulted in an inadequately supported decision.

**B. The ALJ Erred in Evaluating Plaintiff's Testimony and Lay Witness Reports**

During hearings in September 2018 and February 2024, Plaintiff provided extensive testimony about her symptoms and functional limitations.[5] AR at 33-64, 1919-58. She also completed four written function reports and submitted third-party reports from her fiancé and

[5] A third hearing was held in February 2023, but Plaintiff did not testify at it. AR at 1056-74.

friend. *Id.* at 224-31, 257-74, 1467-85, 1499-1506. The ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and did not make a finding of malingering. *Id.* at 1032. Nonetheless, the ALJ concluded that Plaintiff's symptom testimony was "not entirely consistent" with the overall record. *Id.* The ALJ also assigned little weight to the third-party reports. *Id.* at 1043.

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ need not believe every allegation, nor analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. To reject third-party reports, an ALJ need only "give reasons that are germane to each witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the Court finds that the ALJ erred in evaluating the testimonial evidence for four reasons.

First, the ALJ noted that some examinations reported abnormalities, such as upper back tenderness and trigger points, consistent with fibromyalgia. AR at 1032, 1036-38. However, he concluded that Plaintiff's testimony was contradicted by the lack of "objective findings" substantiating her claims of severe pain. *Id.* at 1032. He pointed to several appointments during which Plaintiff showed no acute distress, maintained a healthy appearance, experienced no joint pain or swelling, displayed full or intact range of motion in the extremities, exhibited good muscle strength and tone, had intact sensation with no obvious motor or sensory deficits, and was observed with a normal, steady gait. *Id.* at 1036-37. This rationale parallels the ALJ's reasoning for dismissing the treating physicians' opinions and is just as flawed. As described

above, the examination findings cited by the ALJ are perfectly consistent with debilitating fibromyalgia. The condition is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590; *see also Revels v. Berryhill*, 874 F.3d at 666 (citing *Benecke*).

Second, the ALJ erred in rejecting Plaintiff's testimony based on the characterization of her treatment as "routine." AR at 1034-37. Any evaluation of the aggressiveness of a treatment regimen must consider the context of the condition being treated. In this case, Plaintiff received monthly trigger point injections alongside prescriptions for various medications to manage pain, including fentanyl, methylphenidate, oxycodone, gabapentin, topiramate, and alprazolam. *Id.* The ALJ failed to explain categorizing this treatment as "routine," and the Ninth Circuit has repeatedly found such treatment to be anything but conservative. *See Revels*, 874 F.3d at 667.

Third, the ALJ also referenced that after transferring medication management to her primary care provider, Plaintiff tolerated lower dosages and reported fewer bad days. AR at 1037 (citing *id.* at 1567, 1583, 1586, 1590). However, an evolution in treatment does not contradict her testimony about her symptoms and functional limitations. Experiencing "some improvement does not mean that [Plaintiff's] impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). While the record reflects some improvement, it simultaneously indicates that Plaintiff continued to endure significant symptoms, including pain, upper back tenderness, trigger points, and migraines.

Finally, the ALJ erred in finding Plaintiff's symptom testimony inconsistent with reports of her daily activities. AR at 1038. Though inconsistencies in daily activities might justify skepticism regarding symptom testimony, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability."

*Benecke*, 379 F.3d at 594 (alteration in original) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). A claimant "does not need to be utterly incapacitated in order to be disabled." *Id.* (quoting *Vertigan*, 260 F.3d at 1050). The ALJ based his assessment on records indicating that Plaintiff engaged in various activities, including driving to doctor's appointments, doing laundry, cooking, cleaning, preparing meals, washing dishes, setting boundaries and effectively communicating with her partner, shopping at Walmart and the Dollar Store, watching and walking a neighbor's dog, and training her own dog. AR at 1038 (citing *id.* at 257-65, 1611, 1617, 1794, 1804, 1820, 1829, 1832, 1836, 1839). The ALJ failed to acknowledge, though, that Plaintiff repeatedly explained that her capacity to complete tasks was limited to short durations within a single day and that she often required breaks—which was consistent with her symptom testimony and functional limitations.

The ALJ thus failed to meet the high bar for rejecting Plaintiff's symptom testimony. For similar reasons, he erred in rejecting the reports submitted by Plaintiff's fiancé and friend. Although the ALJ claimed to appreciate their perspective, he concluded that the assessments from the administrative consultants were more aligned with the longitudinal record. AR at 1043. As outlined earlier, this reasoning was flawed. It neither established "clear and convincing" grounds for rejecting Plaintiff's testimony, nor offered "germane" reasons for discounting the function reports submitted by Plaintiff's fiancé and friend. *See Molina*, 674 F.3d at 1114.

**C. Remand for an Award of Benefits is the Proper Remedy**

Plaintiff argues that the ALJ's mishandling of the medical opinions and testimonial evidence compels an award of benefits. (Dkt. ## 10 at 17, 13 at 8-9.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). To determine whether such an award is

appropriate, the Court applies a three-factor test: (1) did the ALJ fail to provide legally sufficient reasons for rejecting evidence; (2) are there any outstanding issues to resolve before determining disability; and (3) would the ALJ need to find the claimant disabled if the rejected evidence were credited as true. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, each of these credit-as-true factors is satisfied and remand for the calculation and award of benefits is warranted. The record is comprehensive, incorporating treatment notes from more than 80 visits with Plaintiff's primary care provider alongside medical records from 2014 to 2024. AR at 314-1020, 1551-1918. It includes functional capacity assessments from two treating providers, an examining physician, and three consulting doctors. *Id.* at 105, 1017-20, 1110-11, 1121-22, 1130-31, 1139-40, 1611-14, 1652-53. It also includes Plaintiff's testimony from two hearings, multiple function reports she completed, and third-party function reports from her fiancé and her friend. *Id.* at 33-64, 224-31, 257-74, 1467-85, 1499-1506, 1919-58. The Vocational Expert ("VE") was asked hypotheticals about the ability of an individual with Plaintiff's physical limitations as described by Dr. Bakken, and testified that she "would not be able to meet [the demands of] competitive employment." *Id.* at 1070 (responding to whether a person missing more than one workday per month, off-task more than 15 percent of the time, or requiring more than one added work break could sustain employment); *see also id.* at 60-61 (VE testified that being off-task 10 percent of the workday or requiring more than one added break would lead to termination).

The other credit-as-true factors are also satisfied. The ALJ failed to provide legally sufficient reasons for rejecting the medical opinion of Plaintiff's treating specialist and for rejecting Plaintiff's testimony about her symptoms. AR at 1032, 1036-38, 1041-42. He also erred in rejecting the medical opinion of Plaintiff's primary treating provider and in rejecting the lay

opinions of Plaintiff's fiancé and friend. *Id.* at 1042-43. If credited as true, Dr. Bakken's opinion establishes that Plaintiff is disabled, because the VE testified that someone with the limitations established by Dr. Bakken could not work. *Id.* at 1017-20, 1070. There are no outstanding issues to resolve. Nor is there any "serious doubt," based on "the record as a whole," that Plaintiff is in fact disabled. *See Garrison*, 759 F.3d at 1021. Her impairment of fibromyalgia has been repeatedly substantiated by tender-point examinations, which SSR 12-2P establishes as proper evidence of the condition. AR at 1584, 1611-14, 1780. Moreover, Plaintiff's testimony, her function reports, and the treatment notes from her treating providers consistently show that she was suffering from severe pain. *See*, *e.g.*, *id.* at 33-64, 224-31, 257-74, 531, 541, 600, 606, 609, 615, 624, 627, 837, 840, 844, 847-96, 953, 955, 962, 967, 970, 975-1013, 1467-85, 1499-1506, 1919-58.

The "exceptional facts" of this case merit an immediate award of benefits. *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). Plaintiff filed her applications nearly eight years ago. AR at 200-13. Since then, three hearings have been held, and two VEs have testified that an individual with the limitations supported by the medical and testimonial evidence could not perform any work in the national economy. *Id.* at 33-64, 60-61, 1056-74, 1919-58. Furthermore, two different ALJs have rejected Plaintiff's treating providers opinions based on their own misinterpretation of the evidence and the pathology of fibromyalgia—despite the Ninth Circuit's explicit directive to properly evaluate these perspectives. *Id.* at 13-27, 1024-45, 1156-59.

The Commissioner argues against awarding benefits due to conflicting medical opinions and the perceived unreliability in Plaintiff's reporting. (Dkt. # 12 at 14.) The ALJ erred in giving more weight to the opinions of two administrative medical consultants and to that of Dr. Deem (who examined Plaintiff once and only reviewed one record related to treatment for a urinary

tract infection) than to the opinions of Plaintiff's treating providers, Drs. Bakken and Addison. AR at 1038-43. The ALJ also erred in discounting Plaintiff's testimony as unreliable on the basis of a few minor inconsistencies related to migraines and mobility, as well as her ability beyond lying in bed all day. *Id.* at 1032, 1037-38. These errors echo those previously identified by the Ninth Circuit. *Id.* at 1156-59. Under these circumstances, granting the Commissioner another opportunity to meet his burden would perpetuate the very "heads we win; tails, let's play again" system that the Ninth Circuit has repeatedly cautioned against. *Benecke*, 379 F.3d at 595. "[F]urther delays at this point would be unduly burdensome." *Trevizo v. Berryhill*, 871 F.3d 664, 682-83 (9th Cir. 2017), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

In sum, the Court sees no valid reason to exercise its discretion to mandate yet another hearing. The compelling evidence overwhelmingly supports an immediate award of benefits.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for an award of benefits under sentence four of 42 U.S.C. § 405(g).

Dated this 24th day of January, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge